22-52-77, and Citizens United PAC, Appellant v. Federal Election Commission, and New Republican Mr. Hancock for the Appellant, Mr. Torchinsky for the Appellee, New Republican PAC. Good morning, Your Honors. May it please the Court, Kevin Hancock for the Appellant and Citizens United. This case involves a challenge to the Federal Election Commission's dismissal of two administrative complaints alleging campaign finance violations. First, in the matter involving the candidacy and soft money complaint, the District Court erred by determining that the FEC's dismissal was unreviewable under this Court's decision in new models. Second, in the matter involving the coordination complaint, the District Court erred by determining that the FEC's dismissal was not contrary to law. I'll address the soft money and the candidacy complaint first. The dismissal of that complaint is reviewable because the statement of reasons issued by the Federal Election Commission did not invoke prosecutorial discretion as an independent basis for the dismissal. Instead, the statement of reasons purported exercise of prosecutorial discretion is entirely dependent upon the statement's legal determination that deciding whether someone is a candidate requires probing their subjective intent. How could it matter even if the blocking commissioners, the three commissioners, had invoked prosecutorial discretion because they don't act for the commission? I thought the commission can only act by a four-member majority. Well, Your Honor, in our argument in the alternative where we, you know, we argued that new models, that a court should follow the precedent prior to new models because it conflicts with prior precedent. And so in that argument, we would agree, although the argument, our argument distinguishing new models is operating under, you know, the fact that new models controls. We think new models is distinguishable, so it's not necessary to reach whether new models should be followed under the Sierra Club precedent. Let me tell you how I read the order and tell me if you think this is fair. I'm not a hundred percent clear, but they start with an extended analysis of whether there is sufficient evidence of the soft money violation. And then after they conclude no, they have, they talk about prosecutorial discretion and they address several different factors. The lack of evidence that they've talked about and then several more. The wide-ranging costly and invasive nature of the inquiry, the backlog of cases, the impending statute of limitations, throw everything in the mix and say like that would be a very typical analysis of prosecutorial discretion. Like you wouldn't expect it to be dramatically sealed off from the merits analysis. Well, I guess I have a few a few quibbles with your honor's description of the same reason. So first, I think the that discussion goes to whether then-Governor Scott became a candidate in 2018. They discussed the poll that was conducted in 2018 and other possible indications. And then at the top of that last page, JA290, the statement says it acknowledges that there's significant evidence of Scott's potential earlier candidacy during the second long period. You're on 290 now? That's correct, yes. Second sentence from the top. So the statement, the statement acknowledges that there's significant evidence that Scott possibly was a candidate earlier during his seven-month term of chair, which occurred in 2017. And then the next sentence, the commission effectively says, well, we're not going to look into that because of a legal determination, because it would be necessary to probe his subjective intent to determine whether during that seven-month period, he in fact became a candidate. And because we believe that is the legal standard, that would require a long, costly, invasive investigation. I mean, that it bears, that sentence you just read bears on the merits, but it also bears on prosecutorial discretion, which is the topic sentence for that paragraph. So it just seems to me hard to unscramble. I agree that the sentence bears on both, but the critical point here is the relationship between the legal analysis and the invocation of prosecutorial discretion. So I would compare that with what occurred in the new models case. So there, the court was very clear that prosecutorial discretion was offered in that statement of reasons, in addition to the legal analysis, and that the two were distinct, independent grounds for dismissal. And so the court there explains that, you know, because there's no law to apply in analyzing the discretionary grounds, and if we analyze the legal grounds, we would risk an advisory opinion because the discretion is an independent basis for dismissal. That's not the case here because the relationship between the legal analysis and the discretion is dependent. Everything springs from the statement's incorrect reading of the law, that the standard is a subjective one. And the later concerns regarding the statute of limitations, and so on and so forth, are all expressly dependent upon the notion that a long, costly, and invasive investigation would be necessary to probe subjectivity. But Mr. Hancock, on page 290, the second paragraph, I mean, that does not seem to be connected to any legal analysis. I mean, these are pretty much just straightforward concerns, right? The fact that there are a number of matters nearing the end of their statute of limitations, the Commission's only had a quorum, you know, was without a quorum for a long time, and so therefore really has to prioritize different enforcement actions. I mean, why isn't this a standalone invocation? Because the particular language used by the Commissioners indicates a dependent relationship between the preceding paragraphs, legal analysis, and those discretionary factors. Sorry, the Commission, in the first sentence again, references the expensive and resource-consuming investigation that it thought would be required by its misunderstanding of the legal standard, the need to probe subjective intent. And then all the follow-on concerns about the statute of limitations, and so on and so forth, all are a result of their understanding that this long, invasive, cumbersome investigation would be necessary. To put it differently, we don't know whether the Commission still would have exercised or been concerned about those prudential and discretionary factors had it correctly understood the legal standard to only require an objective analysis. I have a question about the scope of the stated discretionary factors in the Blocking Commissioners' statement as to Matter Under Review 7370. If you look at the Commissioners' conclusion, it seems to me they only invoked prosecutorial discretion with respect to the, quote, allegations that Scott and his campaign committee failed to timely file candidacy and organization forms. So just a subset of those 7370 allegations, and of course also not including the Matter Under Review 7496 allegations. It seems like there's a split even within 7370 with respect to what's being dismissed on discretionary grounds and what's not. I think that's correct, Your Honor. The statement does exercise prosecutorial discretion very specifically in three different places, including the place Your Honor identified, only as to the candidacy claims. And as the District Court correctly recognized, did not exercise prosecutorial discretion with regard to the 7496 complaint, the coordination claims, and thus reach the merits of that complaint. So if we were to rule even under new models, we should hold that the discretion applies only to the candidacy? That's correct, Your Honor. I think the District Court determines that because the candidacy claim is a prerequisite for the soft money claim that that exercise of prosecutorial discretion for the candidacy claim prevented it from then going forward and reaching the merits of the... But that's a merits point with respect to the non-candidacy claims in 7370, right, as opposed to a threshold, no review because discretion. That's correct, yes. But don't the subset of claims in 7370 that bear on the initial filings and the subset that bear on the soft money, don't they turn on the same question, which is when the governor became a It is necessary to determine first that the governor had become a candidate. So, you know, I noticed the same thing Judge Pillard did about you can read some of this language as invoking prosecutorial discretion for only a subset of 7370. But is there any Is there any logic to support that, that a rational commission might think the soft money issue is just a merits one and the paperwork filing issue is a prosecutorial discretion one? I couldn't think of one. I thought they all just flowed from a question when he became a candidate. I'm not exactly sure, Your Honor. And for what it's worth, we did argue below before the district court that the exercise of prosecutorial discretion was just limited to the candidacy claim and did not also reach the soft money claim. I didn't think, did you argue that here? Here your theory was mainly what you said earlier, which was discretion and merits. We were more focused on how prosecutorial discretion was not exercised as to the coordination claim and the coordination concern. Okay. At the end of the day, I'm not sure the distinction matters too much again because of the need to determine Governor Scott was a candidate prior to them determining that New Republican or Scott may have violated the soft money ban. You're talking only about 7370 because on the other one, there's some coordination claims following even when your opponent's claim, I mean, when he announced. That's correct. And that's a critical reason why the district court erred with regard to the coordination because in footnote two of the statement of reasons, the commission appears to dispose of the coordination claims on a misunderstanding of the law, on a misunderstanding that it was finding coordination violation. That is an error of law and New Republican doesn't even claim that that is correct, nor did the district court. Can you say more about why that would be an error of law, assuming that the commission didn't dismiss that complaint on prosecutorial discretion? Of course, your honor. So the merits of the coordination complaint do not require that the commission determined that Governor Scott was a candidate in 2017. Even assuming Governor Scott did not become a candidate until March 26, 2018 when he admits doing so. There still could be a coordination violation. There could have been coordination between Senator Scott and his agents after that date, or he could have coordinated prior to that and said, okay, when I become a candidate later on, here are my needs. Here are my plans. Here's the ad that I would like you to run or request or suggestion is the legal standard under the commission's regulation. That could have occurred regardless of, or even assuming Governor Scott became a candidate on March 26 when he admits doing so. The point is that there were expenditures after he publicly became a candidate? I apologize, your honor. The point is that there were expenditures after he became a publicly announced candidate? That's correct. In May and June, the super PAC, New Republican, made independent expenditures in support of his campaign. Isn't the prohibition on coordination, doesn't that apply only to candidates? So the standard is not clear. So Senator Scott became a candidate. So that's undisputed. I don't think it's clear whether it's required that Senator Scott had been a candidate at the time of making a request or suggestion. It could be sufficient that he became a candidate later on. The commission was presented with that question in the Senate Majority PAC advisory opinion cited in the complaint and deadlocked. But even assuming... So though under our precedence to find something is contrary to law, it has to be an impermissible reading of the statute. So if the controlling commissioners believe there's a link between the two different complaints, is that an impermissible reading of the statute? Maybe you think it's not the best reading of the law, but is it an impermissible one? I think it's impermissible because it's undisputed that had Senator Scott coordinated with the Super PAC with regard to the independent expenditures after March 26th, when he became a candidate, that that would be a violation. And I don't think they don't doubt, I don't think anyone can test that that would be a violation. But so before March, doesn't it turn on whether he was in fact a candidate at that point? I don't think the commission has taken a clear stand on that question. But footnote two doesn't hinge upon that distinction. It just says categorically, because we did not find a candidacy violation or a soft money violation, we are required to dispose of these other claims. I think under Orlowski and some of our other cases to show that it's contrary to law, you have to show that there was an impermissible reading. And it seems here there's some ambiguity. And respectfully, Your Honor, I think after that March 26th date, there's no ambiguity. There's nothing in the stated differently, there's nothing in the regulation, the applicable regulation that says that there has to have been like a soft money violation prior to the coordination. Indeed, these were two distinct complaints filed at two separate times. Presumably the only reason why they're together in the same statement is because they involve common facts. They could have been separated out. Suppose we agree with you that footnote two is not enough to resolve the coordination claim against you. What do you do with footnote 25, which seems to endorse a different and probably better rationale, which is the OGC found insufficient evidence to go forward at that time. They recommended holding it in case something turned up going forward on the other claim. Commission has just decided not to go forward on the other claim. So they only have the evidence that they have on coordination, and they say they agree with OGC. There's not there. I think there are a number of problems with footnote 25. The first one is that it incorporates footnote two. It cites the footnote two and references what we believe is the error of law made. But just to identify the allegations of the second matter. Um, the general counsel's report that is cited by that footnote doesn't support the commission's dismissal because the general counsel did not actually recommend dismissal. The general counsel, the district court, fundamentally misunderstood what the general counsel's recommendation was. But I think what Justice Cassis is pointing out is in the circumstances of the recommendation, which said, let's go ahead with the candidacy claims, and this will follow along and maybe more things will come out. And if you read it that way, then the recommendation is no longer supported on that ground for these blocking commissioners when they've decided not to go on the candidacy. Right. So as to the evidence discussed in the FGCR, we think it's not. So the general counsel actually cites to its discussion of the evidence. It says, as discussed above, the available information shows that Scott was involved with New Republican past 2017. And it refers back, and there are pages of analysis in the general counsel's report proceeding that page. And that page is 232 in the J.A. Discussing the relationship, the intertwined relationship between Scott and the super PAC. And then notes, well, we don't have direct evidence. We don't have evidence of Scott specifically making a request or suggestion. So let's wait. Let's see pending this investigation whether new evidence comes to light. That doesn't reasonably support the idea that there's no reason to believe or dismissal because the general counsel could have taken that step. The general counsel could have said, we recommend no reason to believe. We recommend the commission dismiss these claims for lack of evidence right now. And so the right way to go on that would be, there's an error of law. Send it back and see how, how the commission would act on this. Yes. Yes. In addition, they cite the affidavit submitted by Ms. Hazelwood. We think the district court also erred in placing weight upon that affidavit that the affidavit cannot bear. So first the statement of reasons and the commission issued by the commission doesn't actually rely upon the Hazelwood affidavit as it pertains to the coordination claims. It states the claim in the Hazelwood affidavit, but it doesn't credit it. In fact, other parts of the FGCR discredit the Hazelwood affidavit. And the district court claiming that the affidavit flatly denies any coordination, but it's not what that affidavit does. That affidavit says Ms. Hazelwood did not directly coordinate with Governor Scott, but there are many other avenues to coordination that are not covered by that statement in the affidavit. Well, it says neither Governor Scott nor any representative or agency in this campaign committee was involved. And I'm sorry, Your Honor. I'm reading at the end. There's an extraneous not. It's clearly like that last sentence. In the last paragraph of the affidavit, Ms. Hazelwood does state that she conferred with other people contracted by the political committee, personnel, consultants, and counsel, et cetera. It's not disputed that the record demonstrates that Governor Scott, when he became chair of the Super PAC, hired his, you know, former advisors and folks he had worked with prior to that to work for the Super PAC. So folks that could have been his agent in terms of knowing his plan, his future potential future plans for working for the Super PAC. And Ms. Hazelwood says, you know, I did confer with those folks. We'll give you a little time for rebuttal. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Jason Twerk. Good morning, Your Honors. Jason Twerkinski for New Republic. May it please the Court. Controlling circuit precedent compels affirmance here. Both new models and Commission on Hope say that dismissals, even based in part on prosecutorial discretion, are unreviewable through this path. And as a result, the district court should be affirmed with respect to its dismissal of the complaint challenging the commission's prosecutorial discretion. And then the district court was correct to conclude that 7496 on its merits was sufficiently reasonable to be accepted. And for that reason, this Court should affirm the district courts. It's really extraordinary and difficult for us not to have a commission here today. And I realize that also puts you in a difficult position. You talk about clear precedent requiring a dismissal where prosecutorial discretion is involved, but we also have to grapple with the Supreme Court's decision in Aikens which held inapplicable Cheney's rebuttable presumption against judicial review of exercises of non-enforcement discretion because the statute explicitly provides to the contrary. And in Aikens, as the Statement of Reasons said, the FEC invoked prosecutorial discretion as the Solicitor General said in arguing that case before the Supreme Court. There was an invocation of prosecutorial discretion there. And the Supreme Court in the decision addressed that prosecutorial discretion was not in the context of this unusual act where there's an equally divided commission that Heckler doesn't apply. So we have some circuit precedent and then we also have a higher court saying to the contrary. Your Honor, I think Aikens obviously has been a debate on this Court going back to the Commission on Pope cases and the New Models cases. And I think Judge Rau in the New Models 1 opinion really squarely addressed Aikens and basically said Aikens stands for the proposition that the petitioners there had standing to challenge it. Right, but a for sure they have standing because the claim notwithstanding an exercise of prosecutorial claim of prosecutorial discretion on the part of the commissioners is judicially reviewable in a private party suit and therefore redressable. Right, so standing there brings in the question what's reviewable and what's not? When can a private party sue? And if that's the premise for the standing determination, it's a necessary aspect of the court's holding. I think the way I read that case is that the standing determination was based on essentially whether they were seeking information that they wouldn't otherwise have if they had prevailed in front of the commission. But on page 25 in Aikens, the court talks about how the court may well have, the FEC may well have dismissed had there been prosecutorial discretion asserted. And then the line that you quoted about saying that the FEC statute was different appears on page 26. So there's a little bit of an internal contradiction inside Aikens where it sort of indicates that there's prosecutorial discretion available to the commission, but then says the FECA statute's a little bit different. But I don't read Aikens to foreclose the FEC's exercise of discretion. No, no. It's just saying we would have to send it back because on the correct view of the law, instead of us trying to divine what they would do on the correct view of the law, and that's very opposite to this case, right? We should send it back and see whether the commission would still have decided in the exercise of its discretion not to require the production of the information. Right. But if the court had agreed with the view the prosecutorial discretion was foreclosed by the FEC, why would the court have suggested that the commission had the prosecutorial discretion option even upon remand? No, no. It's not the prosecutorial discretion is foreclosed. It's what's the implications for judicial review and for the private right of action. And what they're saying is they're sending it back. And when the commission by a legally operative or member or majority vote exercises prosecutorial discretion, then, you know, that is different. But here there's a statement of discretion by a non, by people not even acting, can't legally act for the agency. It's very odd to say we would use very deep deference to their thinking when it's... Except that the way Congress has structured the FEC under FECA requires four affirmative votes to take an action. If Congress had wanted a 3-3 vote to proceed, it would have written the statute different. And I think that's where I sort of disagree a little bit with your perception or with your position that four votes were required to exercise prosecutorial discretion. That's not the way Commission on Hope or new models interpreted. Right. I realize that. And what I'm trying to understand is how the position that leaves us in, because, I mean, you know, because I've written about this, that I think that the Commission on Hope took a wrong turn. It was in conflict with our prior cases. And I think if you go back to the DCCC case from 1987 that then Judge Ginsburg wrote, you know, that was an interesting split because it was three to proceed, two for prosecutorial discretion, and one who abstained. And clearly they didn't have the four votes. So even going back to around the time of Aikens, this court didn't seem to take the view that four were required to exercise prosecutorial discretion. But there, they reject the Ginsburg Starr-Nice decision. They reject Hector. They reject the notion that there's nothing to review. They send it back and say, we need to know. You know, there's no bar in DCCC, no bar on review of a deadlock. They respond to the FEC, which said, this decides nothing. And they say, well, actually, the fact that they've said it's simply an exercise of prosecutorial discretion is not a bar to our review. So we're talking about a jurisdictional question here. And the issue is, it's a gate to the private right of action. It's not that the FEC in any way lacks discretion whether it proceeds. But all of this, of course, has to do with what is the nature of what a private right of action? Your Honor, the private right of action sort of invocation in FECA was extremely rarely used prior to 2013. Over the preceding 40 years, I think one case had proceeded, and there had been plenty of deadlocks that had been reviewed by this court and found sufficiently reasonable to be accepted and not reversed on any kind of review of prosecutorial discretion. Do you have cases of 3-3 deadlocks that were reviewed that way? I'm really interested in that. D-triple-C was 3-2-1. D-triple-C, we were remanded. And we didn't say, bless the commission's act. That's right. So normally, Your Honor, the commission would be here to defend itself. But what happened here was we didn't have a fourth commissioner available or a fourth commissioner who declined to vote for enforcement. And there's a number of these cases going through. With respect to whether there have been review of 3-3 dismissals prior to 2013, I would probably need to submit a 28-J letter to the court because I don't have... 3, you said 2013? 2013, which was about the time that the one commissioner started, that the commission started declining to defend itself, both Citizens United. You're not arguing here that this court lacks jurisdiction over this. You're just suggesting that it's unreviewable. Yes. I misspoke. I actually apologize because that's an issue in the case. Yeah. Not about jurisdiction, but whether it's reviewable. That is correct. Yes. Correct. Prosecutorial discretion dismissals are unreviewable. It's not that the court lacks jurisdiction. It's just that they're unreviewable, essentially under, as Judge Rau has pointed out, under kind of almost a separation of powers for deference to the executive agency. That's what's so odd to me. And my friend, Judge Rau, has written about this. And I also have an opportunity also to do so. But it's hard to understand how it would be a separation of powers problem to honor the commission's decision to stop wherever it seeks to stop and to allow a private party to pursue something with its resources that the commission chooses not to pursue. But the private party provision only comes after a lawsuit like this is filed and the court determines that the commission acted contrary to law. And I think what new models and Commission on Hope stand for is the proposition that judicial discretion or prosecutorial discretion dismissals aren't contrary to law because, as those courts have pointed out, there isn't an applicable standard or justiciable standard for this court to evaluate when it looks at things like the commission cited in the Statement of Reasons and they say things like, use of agency resources, approaching deadlines in other matters, approaching deadlines in the current matter, and what the agency wants to prioritize over other things. And I think both Commission on Hope and new models stand for the proposition that courts aren't going to insert themselves into that executive decision. And you're right, Judge Pillard, it might well foreclose the ability of private plaintiffs to proceed through the step of being able to file a private lawsuit. But guess what? Congress is well aware of that. It's been the way that that has been adjudged since it has been adopted and Congress hasn't changed. It's so interesting that you refer to, this is where it would be great to have the commission here. Did you say there was only, you said the private right of action was rarely used before 2013. And so here's another theory of what the interplay between private right of action and commission enforcement is, that Congress wanted the commission to enforce. They wanted the commission to be the primary enforcer. They didn't want a lot of private rights of action because, you know, these are cases that are politically charged and they want to keep them under the control of an agency. But they also recognize they had to make the agency partisan balanced because otherwise enforcement could be politically dominated. So they're trying to avoid political domination of enforcement. At the same time, they put a private right of action in there because they want to avoid stonewall, right? But they designed the private right of action in this genius way. It turns out not to be so genius, but rather at least where we're at today, not very functional. But if you look at the design, it appears that what they're doing is saying, look, FEC, you get every chance. If you're acting according to the law and you can manage to act in a nonpartisan way, in a bipartisan way, then you are the exclusive enforcer. It's when you act contrary to law and or can't get your act together to do something in a bipartisan way, that's going to open the door for private rights of action. I don't think Congress actually intended it to say if you can't get your act together. I think, look, FEC has a unique statute, right? Because who are the subjects of the enforcement action? Members of Congress, right? There are candidates for the Senate, there are candidates for the House. We see a lot of just, you know, organizations that raise money. Yes, but all of those involve candidates for office in some way, right? So, you know, I think FEC is a unique statute because Congress is uniquely aware of its effects, its interpretation, how it's been sort of accepted or how it's been sort of used in practice, right? Because there's no member of Congress except perhaps an appointed senator who didn't go through the FECA process to get to where they are. The under enforcement is a feature, not above. Correct. Yes. So my friend, Judge Peller, and I may disagree about the meaning of FECA, but I think we both share our frustration that the FEC is not appearing in these cases. It would be certainly helpful if the commission were here, but can I ask you about the second complaint? Absolutely. So I am more skeptical that this second complaint is dismissed on prosecutorial discretion because the commission suggests it is dismissing, you know, the first complaint effectively, you know, on prosecutorial discretion. And then they provide what looks like a legal reason for dismissing the second one. You know, in footnote two, they say that, you know, if we dismiss the first on prosecutorial discretion, we are required to, you know, that's a threshold legal for the second. I think I read that a little bit differently. And I also would point you to JA 272 and 273, which is actually the certification of the vote. If you look at those pages, they failed by a three to three vote to dismiss the allegation under Heckler versus Cheney that he failed to finally file a statement of candidacy and he failed to file a statement of organization. But then when you look at, you know, sub C, sub D, sub E, sub F, and sub G there, where they're actually talking about the merits related to both the soft money complaint and the coordination complaint, which I view as different legal analysis, there's not an invocation of Heckler v. Cheney in the actual certification of the vote there. So I think in terms of parsing out what they dismiss on prosecutorial discretion and what they dismiss on merits, I think the trial court got it right because a combination of what was in the statement of reasons and what was in the certification of the vote, there's a lack of citation to Heckler versus Cheney in the votes on the soft money and the coordination rules. And I distinguish those because, you know, pretend there was a break in time, right, when Senator, well, then Governor Scott announced that he was a candidate for Senate. If he had been raising money for a new Republican wallet candidate, that would violate the soft money rules, but it wouldn't necessarily violate the coordination, right? It's the act of the advertisements that were aired in May and June that the appellants here are saying violated the coordination. And so I think there's a distinction between the soft money question and the coordination question that is critical. And I think the commission was struggling with that a little bit. And I think the trial court was struggling with that a little bit, but I view them as distinct allegations from each other because you could have, you could have had coordination without the soft money out, right? If Senator Scott and his team had sat down with the super PAC in May and been like, hey, you run an ad on, you know, issue A and that'll be great. And I really hope you do it. And here's what I think you should say. That would have nothing, there would be no soft money allegation raising or spending there. It would be a coordination problem and an in-kind contribution to the campaign that would have been on law. So on those claims, if that's not an exercise of prosecutorial discretion, then is it contrary to law? No, because I think what the commission is saying is there was no evidence of any communication between Senator Scott's campaign and the super PAC related to the May and June ads. So on a complete lack of evidence, we are going to decide on the merits that it's not worth, you know, that the commission shouldn't proceed to investigate when there's absolutely, you know, we have a sworn affidavit from the executive director and all we have from the complainants here is speculation. And in their words, it may have occurred, it might have occurred, it could have occurred, but they have no, they have no whistleblower, they have no firsthand information. They base some of their allegations on, you know, press statements to the press by third parties who were not involved with the campaign or with the super PAC. And on the basis of lack of evidence, the commission properly concluded that there was nothing, there was no basis on which to proceed. Is it your view that lack of evidence is an exercise of prosecutorial discretion? I mean, I think there's a reading where you could say lack of evidence is prosecutorial discretion, but I also think there's a fair reading to say if there's no evidence here, we shouldn't proceed because there's no evidence here. But then do we review that under Contrera law? I mean, I think the way that, I think there is a, there is a fair reading of the SOA, of the statement of reasons where you could say both were dismissed on prosecutorial discretion and therefore nothing here is reviewable. I also think the district court wasn't incorrect to separate the two murrs and say one was dismissed on the basis of prosecutorial discretion and the actually read the statement of reasons either way, as we said in our brief, I also think it was entirely reasonable for the district court to read it the way it did and separate the two. So if it was a merits determination, why is it consistent with law? Or why is it not Contrera law? It's not Contrera law because all you need as a district court reviewing that is a sufficiently reasonable basis to be accepted. And I think when you go through what the statement of reason says about crediting the affidavit, the lack of any evidence contrary to the affidavit, it was perfectly acceptable for, you know, pretend this is a criminal case for a prosecutor to say, look, I've got somebody saying this must have happened. I've got somebody saying it didn't in a sworn affidavit. The party saying that it must have happened is based on speculation and comments by third parties who have no firsthand knowledge. And the only evidence in front of me from anyone who has firsthand knowledge is a sworn affidavit subject to penalty of perjury. There's not enough here for me to proceed. And I think that was a perfectly reasonable merits determination. But you could also view that as an exercise of prosecutorial discretion. You didn't defend it that way in the red? I think in our brief, we acknowledge there was a way to read it that way. But I think the way the district court read it was entirely reasonable as well. So I think this court could read it either way, because either way, we get to the same conclusion, which is summary judgment for new Republican and dismissal. Can I take you back to the first complaint and just assume we're going to apply if we apply commission on new models? Do you in order to prevail on Heckler versus Cheney, do you need to show that the exercise prosecutorial discretion is independent of legal analysis? I don't think that I read commission on hope or new models that way. I think an invocation of prosecutorial discretion, regardless of how connected or disconnected it might be from any legal analysis is sufficient to essentially require the court to acknowledge the exercise of prosecutorial discretion and not even in a case where the legal considerations and the discretionary considerations are blended together. I mean, that's, yes, I think that's correct. Based on commission on hope and new models. And your response, maybe I'm asking you something you've already answered, but I'm still stumbling on the message of Aikens, which seems to say, if you have a blended discretionary and legal analysis, we don't assume we can disentangle, but we send it back with a correction of the legal. And so it doesn't, I mean, the threshold to that is that that doesn't prevent, doesn't render it reviewable because then you end up having law that it's that ossified. So what is the mechanism through which the mixed in legal errors get corrected? I think the answer is when there are merits dismissals by the commission on particular issues, those are reviewable under the contrary to law standard. And then the courts and set out for the FEC, if they've gone beyond the bounds of the law and like, like you had present here, you know, in 7496, where the trial court said, you know, look, this, the, the, there was a sufficiently reasonable explanation under the law to determine that on the merits, there was no coordination. And I think it's reasonably reasonable explanation. This is, I think the district court said it's sufficiently reasonable to be accepted is how the district court read this court's standards for the trial court review. Right. And sufficiently reasonable to be accepted is from, that's, that's a, from, from our court. Yeah. And I think that, hold on, exactly where the Julian side of that. I think that that goes to the campaign legal center case at 952 F third at I can find the exact page site, but the court quoted this court said, which puts back to DSCC, which is the U.S. Supreme court case quote, in this deferential inquiry, we asked only whether the commission's decision was quote sufficiently reasonable to be accepted. So yeah, it's, it was DSCC where there was action. I think in that case, it was unanimous. So the notion, or it was certainly a majority. So the notion that a standard of sufficiently reasonable to be accepted, which is a highly deferential standard would apply to a non-majority blocking determination to the content of it. This seems to me to have no rational. So I've never, I've never argued that Congress makes rational decisions when they lay out these statutes. Where in the statute, do you find that beat where you find it is, is essentially where in the statute at 30109, where the court, where Congress lays out exactly what requires four votes and, you know, dismissals do not require four votes. They only were, you know, only, only decisions to proceed require. Right. But this wasn't a dismissal. This was a vote on a reason to believe proposal. The dismissal was separate and it did happen. Well, I have a majority vote. I think there's an ongoing debate. There is, but I'm just looking at the question, whether there is a legal basis for the standard that you endorse, which is that we should look at the content of what the blocking commissioners say and ask whether it's sufficiently reasonable to be accepted. I mean, I think that's been the practice at the trial court and from this court over the last 50 years of FICA. And I think, you know, in this case, fortunately or unfortunately, we don't have the issue of whether they actually closed the file because on the same day that they and dismissed 7496, they also voted five to one to close the file. So you don't have that issue about whether, whether closing the file is the act that the triggers review or whether it's the, the other vote that does is not present in this case. Well, closing the act, it's clearly closing the file is clearly the act that triggers review because that's, that's the time to sue runs from that. Right. Your honor, I think there's a, I think, well, part of the problem. And again, it's not present in this case, but part of the reason that some of the, these lawsuits are there with these 120 day lawsuits with the alleged failure to act is because the commission hasn't closed the file. The public and the respondents and the complainants have no knowledge as to whether the commission had any other votes on them. And again, not present in this case, but I think that's an issue percolating in a few other cases in front. Thank you, your honors. All right. Mr. Hancock, I think we used up your rebuttal time, but we'll give you three minutes for rebuttal. Thank you. Just a couple of points. And then I'm happy to be helpful in any way that I can, your honors. So I, I may be on this understanding, but I am, I believe that the parties are now on the same page about reviewability, not being jurisdiction. And so I would urge the court, even if the court were to see fit to affirm the district court on the reviewability issue, we think it would be proper for the court to still issue an opinion like it did in Orzac v. Sullivan, correcting the basis for the district court's dismissal to clearly state that it should not have been. Is there any practical difference? I think you're right on the characterization. I'm just wondering if it matters. I think there's a huge practical difference in that this area of the law should be clarified in particular because of course, jurisdictional arguments are not waivable. And so they can be raised at any point in litigation. And the Supreme Court in the Wilkins case would matter in other cases highlighted the importance. Thank you. Also, I believe the party is now on the same page that footnote two does in fact, first coordination claims the district court in a passage claims that footnote two does not refer to those coordination claims. We dispute that reading. We think it's clear that footnote two must refer to the coordination claims when it says it's required to dismiss the other claims and cites certification that includes the vote on the coordination claims. And as we've argued, we believe that footnote contains an error of law that forms the basis for that dismissal. Is there any other error of law that you see in the analysis of the coordination claims? Yes. So the way put on the affidavit, the affidavit cannot support the way the commission put on that was unreasonable for the commission to base the dismissal upon that affidavit. You asked us to reverse the district court dismissal of the case. If we agreed with you that the disposition in 70 is reviewable, why wouldn't we just go on to address whether the controlling commission's decision is contrary? We think this court shouldn't do that because the district court went ahead and actually did reach that merits issue. Rather than point out the error and send it back. Correct, because presumably the district court would just come to the same conclusion. So I think this court could just find that that's contrary to the law. Thank you very much. Thank you, Your Honor. Thank you to all counsel. Case is submitted.
judges: Pillard, Katsas, Rao